UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BRIAN COKE NG,

        Plaintiff,

-against-

SEDGWICK CLAIMS MANAGEMENT INC., et al.,

        Defendants.

23-CV-2145 (MKV) (BCM)

**ORDER**

**BARBARA MOSES, United States Magistrate Judge.**

The Court has received and reviewed *pro se* plaintiff Brian Coke Ng's letter-motion dated April 22, 2024 (Dkt. 56) (Pl. Mot.), asking the Court to (i) assess unspecified "sanctions, disciplinary measures and disqualifications" because the Rule 7.1 Statement recently filed by defendant Sedgwick Claims Management Services, Inc. (Sedgwick) is "directly in conflict with" filings made by Sedgwick in 2021 and 2022; and (ii) disqualify Sedgwick's counsel, Aaron Christopher Gross, Esq., of Sobel Pevzner, LLC (Sobel), because plaintiff believes that a link he received by email from a Sobel paralegal on April 2, 2024, was "a willful and deliberate denial of services cyber-attack," aimed at him, in an "effort to Blackmail and silence me in these ongoing case[s.]" Pl. Mot. ¶¶ 4, 6, 12. Sedgwick did not respond to plaintiff's latest attempt to disqualify its counsel,[1] and its time to do so has now lapsed. *See* Moses Ind. Prac. § 2(e).

Plaintiff's motion falls within the scope of my reference. *See Weeks Stevedoring Co. v. Raymond Int'l Builders, Inc.*, 174 F.R.D. 301, 303-04 (S.D.N.Y. 1997) (motions to disqualify counsel "are non-dispositive and are thus subject to the more deferential standard under Rule

---

[1] Plaintiff has repeatedly attempted to disqualify Sobel from representing Sedgwick in this action. (*See* Dkts. 29, 30, 32.) He has made similar attempts in two other cases that he filed against Sedgwick and/or its affiliates. *See* [Proposed] Order to Show Cause (Dkt. 18), *Ng v. Kmart Pharmacy, et al.*, No. 18-CV-9373 (S.D.N.Y. Dec. 9. 2022); [Proposed] Order to Show Cause (Dkt. 21), *Ng v. Sedgwick CMS Holdings, Inc.*, No. 23-CV-10380 (S.D.N.Y. April 23, 2024).

72(a)," as are motions for sanctions, "unless the sanction itself can be considered dispositive of a claim"). For the reasons that follow, Sedgwick will be required to update its Rule 7.1 Statement, but plaintiff's motion will otherwise be denied.

### **Rule 7.1**

Fed. R. Civ. P. 7.1(a)(1) requires a nongovernmental corporate party to identify "any parent corporation and any publicly held corporation owning 10% or more of its stock." The purpose of the rule is to "assist judges in determining whether they may be disqualified because of 'financial interest' in the case." *Knowyourmeme.com Network v. Nizri*, 2021 WL 4441523, at *2 (S.D.N.Y. Sept. 28, 2021), *aff'd sub nom. KnowYourMeme.com Network, Inc. v. Nizri*, 2023 WL 6619165 (2d Cir. Oct. 11, 2023); *see also* Fed. R. Civ. P. 7.1 adv. comm. notes to 2002 adoption ("The information required by Rule 7.1(a) reflects the 'financial interest' standard of Canon 3C(1)(c) of the Code of Conduct for United States Judges. This information will support properly informed disqualification decisions in situations that call for automatic disqualification under Canon 3C(1)(c)."); *Yanakieva v. Pekun*, 2009 WL 196330, *1 (S.D. Ind. 2009) (Rule 7.1 is intended to alert the judge to potential conflicts of interest, "not to put Plaintiff on notice of additional entities that may need to be brought into the litigation").

Sedgwick's recent Rule 7.1 Statement, filed in this action on April 19, 2024 (Dkt. 54) identifies only one disclosable entity: Sedgwick Global, Inc. Plaintiff asserts that this information "may not be truthful," Pl. Mot. ¶ 6, pointing to an Economic Disclosure Statement that Sedgwick filed with the City of Chicago on October 28, 2021 – some two and a half years ago – disclosing that it was 97.41% owned by Sedgwick Global, Inc., which was 100% owned by Sedgwick, Inc., which

was 100% owned, in turn, by Sedgwick, L.P. Pl. Mot. Ex. 2 (Dkt. 56 at ECF pp. 15-16).[2] Plaintiff also attaches a Rule 7.1 Statement that Sedgwick filed in a different case in this Court on January 3, 2022 – more than two years ago – disclosing that it was "a private corporation owned by Sedgwick Global, Inc. and Lightning Cayman Merger Sub, Ltd. (collectively 'the Entities'). The Entities['] ultimate parent company is Sedgwick, L.P.  Sedgwick, L.P.'s ultimate majority shareholder is The Carlyle Group ("Carlyle"). Stone Point Capital, Onex Corporation, La Caisse dé depôt et placement du Québec (CDPQ), and certain management investors are minority shareholders. Carlyle is a New York investment firm that is publicly traded on the New York Stock Exchange under the symbol CG. Onex Corporation is publicly traded on [the] Toronto Stock Exchange under the symbol ONEX." Pl. Mot. Ex. 1 (Dkt. 56 at ECF pp. 10-11).[3]

These prior filings do not show that Sedgwick's recent Rule 7.1 Statement is untruthful. First, its ownership structure may have changed in recent months. *See SiteLock LLC v. GoDaddy.com LLC*, 2023 WL 3344638, at *6 n.10 (D. Ariz. May 10, 2023) ("The fact that SiteLock was owned by IBS for some period following the April 2018 SPA does not establish that SiteLock was owned by IBS when the lawsuit was filed in April 2019."). Second, and more

---

[2] The City of Chicago filing (which required disclosure of "each person or entity that holds, or is anticipated to hold . . . a direct or indirect beneficial interest in excess of 7.5% of the Applicant") further listed the names of four limited partnerships that owned 7.5% or greater interests in Sedgwick, L.P. (Dkt. 56 at ECF p. 16.) One of them, CDPQ Fund 780, L.P., owned 59.09% of Sedgwick, L.P. (*Id*.)

[3] The Court notes that Sedgwick made a similar disclosure in a brief filed in the United States Supreme Court on December 28, 2023, less than five months ago. *See* Brief in Opposition, *Avery v. Sedgwick Claims Management Services, Inc*., No. 23-570, 2023 WL 9064341, at *ii (U.S. Dec. 28, 2023) ("Respondent Sedgwick Claims Management Services, Inc. is a private corporation owned by Sedgwick Global Inc. and Lightning Cayman Merger Sub, Ltd. ('the Entities'). The Entities' ultimate parent company is Sedgwick, L.P. Sedgwick, L.P.'s majority unitized partnership interest holder is CP Encore Holdings, L.P. Stone Point Capital, Onex Peppermint Limited Partnership, La Caisse dédepôt et placement du Quebec (CDPQ), and certain management investors are minority unitized partnership interest holders.").

importantly, Rule 7.1 does not require a corporate party to identify publicly held corporations that own less than 10% of the party's stock.  Nor does it require the disclosure of privately held investors other than "parent corporations," that is, entities that own a majority of the party's voting stock or are otherwise in a position to control it. However, Rule 7.1 is silent as to whether a corporate party is required to disclose its *indirect* parents, if any (that is, its "grandparents"), or the publicly held corporations, if any, that *indirectly* own 10% or more of its stock. The courts have split on this issue. *Compare McAllister v. Adecco Grp. N.A.*, 2017 WL 11151050, at *1 (D. Haw. May 19, 2017) (denying motion to compel Adecco to disclose its "grandparent and great grandparent corporations") *with Faraj v. 6th & Island Invs. LLC*, 2017 WL 385741, at *4 (S.D. Cal. Jan. 27, 2017) ("Both parent and grandparent corporations should be disclosed to best serve the purpose of Federal Rule of Civil Procedure 7.1.").

    This Court concludes that Rule 7.1 should be construed to require a corporate party to identify any indirect parents, as well as any publicly held corporations that indirectly own more than 10% of its stock. Such disclosure would "best serve the purpose" of Rule 7.1, *Faraj*, 2017 WL 385741, at *4; *see also Best Odds Corp. v. iBus Media* Ltd*.*, 2014 WL 5687730, at *1 (D. Nev. Nov. 4, 2014) ("Rule 7.1 should be broadly construed to serve its purpose"), without rendering the reporting requirement unduly onerous. Generally speaking, minority investors (whether direct or indirect) need not be identified at all, unless they are public companies with ownership over the 10% threshold. But if, for example, Sedgwick's "ultimate parent company" is still Sedgwick L.P. (as reported to this Court on January 3, 2022, and to the Supreme Court on December 28, 2023), that fact should be disclosed, along with the identity of any direct or indirect parent of Sedgwick, L.P., and the identity of any publicly held corporation that directly or indirectly owns 10% or more of Sedgwick's stock. If, on the other hand, Sedgwick Global, Inc. is

4

now the only disclosable entity – that is, if Sedgwick Global, Inc. has no direct or indirect parents, and if no publicly held corporation owns 10% or more of Sedgwick's stock, directly or indirectly – Sedgwick shall so state in its updated Rule 7.1 Statement, which must be filed no later than **May 20, 2024**.

Because the extent of the required disclosure under Rule 7.1 appears to be a question of first impression in our Circuit, no sanction, disqualification, or other "disciplinary measure[]," Pl. Mot. ¶ 6, will be imposed at this time.

## Cyber-Attack

Nor is the disqualification of defendant's counsel an appropriate remedy for what appears to have been a cyberattack *on Sobel* on or about April 2, 2024. Both Sobel paralegal Janice Mauro-Douglass and Sobel IT Manager Ken McDonald attest that Mauro-Douglass's email account was "compromised due to a phishing attack," and, as a result, sent out "voluminous unauthorized emails to miscellaneous external parties which were taken from her Microsoft Outlook email contacts." McDonald Aff. (Dkt. 52 at ECF p. 5) ¶¶ 2-3; Mauro-Douglas Aff. (Dkt. 52 at ECF p. 4) ¶¶ 4-5. One of those emails apparently went to plaintiff, who attempted to open a "shared file" link, included in the email, on April 10, 2024. *See* 4/10/24 Email Chain (Dkt. 52 at ECF pp. 7-8). Unable to open the link, plaintiff forwarded the entire email to attorney Gross, who replied, on April 15, 2024, that it was "inadvertant [*sic*] spam," sent because "[m]y paralegal's email got hacked." *Id*.

Plaintiff now states that the "shared file" link – which he attempted to open three times, using three different computers, *see* Pl. Mot. ¶¶ 7-10 – damaged his laptop, which will not "startup or boot up," *id*. ¶ 11, leaving him without access to his work product, evidence, and litigation

5

strategy for this and other cases. *Id.* ¶ 16.[4] However, nothing in plaintiff's motion papers suggests that Sobel's explanation is false, much less that the April 2 email was a "cyber-attack" designed by Sobel itself to sabotage plaintiff's litigation efforts. Moreover, plaintiff does not provide the Court with any evidence (beyond his own attestation as to the sequence of events) that the damage he describes to his laptop was caused by the April 2 email he received from Sobel. *See id.* at 6 (noting that plaintiff is "trying to get Forensic professionals to deal with [the] damage assessment").

Nor does plaintiff explain why the damage to his laptop, even if caused by the April 2 Sobel email, would be grounds for disqualification of defendants' counsel. "Motions to disqualify opposing counsel are viewed with disfavor in this Circuit . . . [and] the party seeking disqualification bears a heavy burden of demonstrating that disqualification is necessary." *Decker v. Nagel Rice LLC*, 716 F. Supp. 2d 228, 231–32 (S.D.N.Y. 2010). Even well-documented violations of the ethical rules governing attorney conduct may not require disqualification of counsel. *See Hempstead Video, Inc. v. Incorporated Village of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005) ("[N]ot every violation of a disciplinary rule will necessarily lead to disqualification[.]"). Here, plaintiff argues that even if Sobel's email system was hacked, Sobel must be at fault, because it had "a responsibility to prevent such," such that its failure to adequately protect against cyber-attacks may have violated Rule 1.6 of the Model Rules of Professional Conduct. Pl. Mot. ¶¶ 17-19. However, Rule 1.6 governs a lawyer's confidentiality obligations to his or her *client*, including the obligation to make "reasonable efforts" to prevent the inadvertent or unauthorized "disclosure

---

[4] When plaintiff first attempted to open the link in question, he was "immediately alerted," by his computer, to an "alarming" message warning him that the site he was trying to access "has been reported as unsafe," and that he should "go back!" (Dkt. 51 at ECF pp. 3-4, 16.) Nonetheless, he made two additional efforts to open the link, receiving the same message each time. Pl. Mot. ¶¶ 7-10. Plaintiff does not explain why he ignored the "alarming" messages and persisted in his efforts to open the link.

or use of, or unauthorized access to" confidential *client* information. *See* N.Y. Rules of Prof. Conduct (22 NYCRR § 1200.00), Rule 1.6(c). Plaintiff is not Sobel's client; thus, Rule 1.6 does not speak to the conduct of which he complains.[5]

## Conclusion

For these reasons, plaintiff's motion (Dkt. 56) for sanctions, disciplinary measures, and disqualification of defendants' counsel is DENIED, except that Sedgwick must file an updated Rule 7.1 Statement in accordance with this order, no later than **May 20, 2024**.

Dated: New York, New York
May 13, 2024                    SO ORDERED.

_____
**BARBARA MOSES**
**United States Magistrate Judge**

---

[5] Where a cyberattack on a law firm causes harm to *adverse* parties, the courts look to the substantive law of the relevant jurisdiction, rather than the ethical rules, to allocate responsibility for that harm. *See, e.g.*, *Ostrich Int'l Co., Ltd v. Michael A. Edwards Grp. Int'l Inc.*, 2023 WL 4025870, at *5 (C.D. Cal. May 18, 2023); *Bile v. RREMC, LLC*, 2016 WL 4487864, at *3, 11 (E.D. Va. Aug. 24, 2016).