USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/19/2024

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BRIAN COKE NG,<br><br>　　　　　Plaintiff,<br><br>　-against-<br><br>SEDGWICK CLAIMS MANAGEMENT SERVICES INC., et al.,<br><br>　　　　　Defendants. | 23-CV-2145 (MKV) (BCM) |
| BRIAN COKE NG,<br><br>　　　　　Plaintiff,<br><br>　-against-<br><br>SEDGWICK CMS HOLDINGS, INC., et al.,<br><br>　　　　　Defendants. | 23-CV-10380 (MKV) (BCM)<br><br>**ORDER REGARDING MOTION FOR JUDICIAL NOTICE** |

**BARBARA MOSES, United States Magistrate Judge.**

These two related cases arise out of pro se plaintiff Brian Coke Ng's claim that he developed myalgia and a movement disorder, diagnosed in 2017, as a result of having been given incorrect dosage instructions for Zoloft (sertraline) at a Kmart pharmacy in 2010. Sedgwick Claims Management Services, Inc. (Sedgwick), the lead defendant in No. 23-CV-2145, was Kmart's third-party claims administrator. Sedgwick CMS Claims Holding, Inc., and the other defendants named in No. 23-CV-10380, are Sedgwick affiliates.

Now before me for determination, on referral from the District Judge (*see* Dkt. 25 in No. 23-CV-2145; Dkt. 30 in No. 23-CV-10380) is plaintiff's Motion and Notice of Motion for Judicial Notice (Pl. Mot.) (Dkt. 69 in No. 23-CV-2145, Dkt. 35 in No. 23-CV-10380), filed in both actions on July 25, 2024, accompanied by his affidavit in support (Pl. Aff.) (Dkt. 70 in No. 23-CV-2145, Dkt. 36 in No. 23-CV-10380). Plaintiff requests that this Court take judicial notice of 45 exhibits attached to his affidavit, plus three additional documents that are not attached to his motion papers.

He contends that all of the documents at issue are "relevant to the claims alleged in my complaint, as well as any pending motion for judgment on the pleadings, motion for summary judgment or motion to dismiss." Pl. Aff. ¶ 1. For the reasons that follow, the motion will be granted in part and denied in part.

## I.    BACKGROUND

### A.    The State Court Action and the First Federal Action

On March 28, 2018, plaintiff filed a state court case (the State Court Action) against Kmart Pharmacy, Kmart Holding Corporation, Sears Holding Corporation, and Sedgwick. The State Court Action was removed to this Court, where it was docketed as No. 18-CV-9373 (the First Federal Action). On October 15 of that year, Sears Holding Corporation and its affiliates (including the Kmart entities sued by plaintiff) filed a bankruptcy petition, triggering the automatic stay pursuant to 11 U.S.C. § 362(a). On January 12, 2023, the parties stipulated to dismiss the First Federal Action as to the debtor entities. (*See* Dkt. 25 in No. 18-CV-9373.) Although the case remained pending against Sedgwick (*see* Dkt. 26 in No. 18-CV-9373), plaintiff filed his Complaint in No. 23-CV-2145 approximately two months later, on March 14, 2023, apparently for the purpose of adding an individual Sedgwick claims adjuster, Sandra Brach, as a defendant. The parties then dismissed the remainder of the First Federal Action without prejudice. (*See* Dkts. 42, 57 in No. 18-CV-9373.)

### B.    The Second Federal Action: No. 23-CV-2145

The Complaint in Case No. 23-CV-2145 is 153 pages long, including exhibits. It asserts claims against Sedgwick and Brach for "promissory estoppel" and "equitable estoppel." Compl. (Dkt. 1 in No. 23-CV-2145) ¶¶ 1, 4-5.[1] Plaintiff alleges that he was prescribed Zoloft in 2010, *id.*

---

[1] All references to "Compl. ___" are to the Complaint in No. 23-CV-2145.

¶ 21, but that a Kmart pharmacist "misfilled my prescription and gave me wrong instructions, directions, and wrong dosages amounts." *Id.* ¶ 22. On July 23, 2010, plaintiff wrote to Kmart about the instructions he was given on July 16, 2010, which – he says – he followed, only to find himself in the hospital the next day with "serotonin syndrome as a result of the dosage overdose and wrong strength of the sertraline." *Id.* ¶ 24 & Ex. 4.

Almost seven years later, on February 22, 2017, plaintiff was diagnosed with myalgia, Compl. ¶ 25, and on February 28, 2017, he was diagnosed with a "drug induced movement disorder." *Id*. ¶ 29. Plaintiff believes that these conditions are "associated and linked to" the Zoloft overdose he suffered in 2010. *Id*. ¶ 26.

On February 24, 2017, plaintiff called a Kmart location and spoke to pharmacist Jessica Hom, who provided contact information for a district manager, Dennis Tokofsky. *Id.* ¶ 27. Plaintiff emailed Mr. Tokofsky, but he did not respond. *Id.* ¶ 28. Instead, on March 14, 2017, plaintiff received a call from defendant Brach and, later that day, spoke to Brach on the telephone "for about thirty one (31) minutes." *Id.* ¶ 34. Both of plaintiff's present claims arise out of that call, which he recorded and transcribed. *Id.* ¶¶ 35-41 & Ex. 5 (transcript). During the call, Brach advised plaintiff that "there is something call[ed] a statute of limitations," and that in New York "the statute is three (3) years," such that there was "nothing further we can do" about his claim, which arose in 2010. *Id.* ¶ 39. Plaintiff then explained that one of his doctors "advised me of the . . . latent effect from the drug," and further advised him "that the Zoloft does caused the problem that I have and it could happen years later[.]" *Id.* ¶ 41. At that point, Brach responded, "Ok. Well, you've said you got something that you were looking at that says your diagnosis, can you send me a copy of that?" *Id.* Brach then promised to "look it over," "review it," "go over it all," and "be in contact with you, once I get that from you . . . ok?" *Id.* ¶¶ 45, 46.

In reliance on Brach's "statements, representations, and promises," plaintiff sent her documents concerning his medical condition. Compl. ¶ 48. However, on March 23, 2017, Brach emailed plaintiff a letter (dated March 21, 2017) denying his claim on statute of limitations grounds. *Id.* ¶ 49. Brach wrote, "The statute for your claim ran 3 years from the date the prescription was filled, or 7/16/13. Because no legal action was taken prior to the statue extinguishing, we must respectfully deny any claim presented against Kmart Corporation relating to this incident." *Id.* Ex. 6.

Plaintiff's theory of liability is that Brach engaged in "affirmative conduct" and "pellucidly clearly evidenc[ed] acceptance and liability [for] my claims based on the latent effects and the latent injuries" by saying "ok" several times during the 31-minute phone call, and by agreeing to look at his documents. Compl. ¶ 42; *see also id.* ¶ 43 (Brach's request for medical documents showed "that a consensus had arrived"); *id.* ¶ 44 ("I was completely convinced" that "[s]he had accepted liability of my latent effects and latent injuries claim[.]"). According to plaintiff, his "detrimental reliance on defendants' statements, representations and promise" caused him to suffer damages "reasonably believed to be in excess of $3.8 million dollars." *Id.* ¶ 89.

On April 4, 2023, defendants in No. 23-CV-2145 filed an answer. (*See* Dkt. 8 in No. 23-CV-2145.) On May 31, 2024, they moved to dismiss all of plaintiff's claims pursuant to Fed. R. Civ. P. 12(c). (*See* Dkt. 61 No. 23-CV-2145.) That motion is pending before the District Judge.

### C.     The Third Federal Action: No. 23-CV-10380

Plaintiff commenced No. 23-CV-10380 on November 28, 2023, against Sedgwick affiliates Sedgwick CMS Holdings, Inc., Fidelity Sedgwick Corporation, Fidelity Sedgwick Holdings, Inc., the Carlyle Group, Inc., and Dave North. On February 26, 2024, plaintiff filed an Amended Complaint, this time naming Sedgwick Global, Inc., Sedgwick, Inc., Sedgwick, L.P., and Sedgwick CMS Holdings, Inc. as the defendants. *See* Am. Compl. (Dkt. 4 in No. 23-CV-

10380).[2] The Amended Complaint is 230 pages long, including exhibits. Plaintiff explains that he has claims against Sedgwick and Brach for "promissory estoppel," "equitable estoppel," and "negligent misrepresentation," *id.* ¶ 1, but that in "this separate action" he seeks "relief for piercing the corporate veil." *Id.* ¶ 3.[3]

Plaintiff's factual allegations in the Third Federal Action are substantially the same as those in the Second Federal Action, with some additional detail. For example, in his newest complaint, plaintiff alleges that Kmart pharmacist Hom filed a "Quality Related Event Report," which was forwarded to Sedgwick and defendant Brach, Am. Compl. at 10 ¶¶ E, F, and that he had a conversation with Hom on March 24, 2017. *Id.* at 20 ¶ a. Plaintiff also alleges that Brach stated during her March 14, 2017 phone call with him that Sedgwick had no record of any claim by him in 2010, which was "false and in conflict with Kmart." *Id.* at 19 ¶ a. Additionally, he asserts that on May 3, 2017 (after Sedgwick denied his claim), he submitted a "New Claim" to Kmart Pharmacy #7777, after which he was directed to contact an attorney named Tom Lynch, *id.* ¶ 70, who advised him to get a "doctor opinion" stating that "this latent injury is based on something that happen back 7 years ago[.]" *Id.* Plaintiff does not reveal whether he ever obtained a medical opinion as to the cause of his myalgia and movement disorder.

On May 31, 2024, defendants moved to dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6). (*See* Dkt. 26 in No. 23-CV-10380.) That motion is pending before the District Judge.

---

[2] All references to "Am. Compl. ___" are to the Amended Complaint in No. 23-CV-10380.

[3] The Complaint in the Second Federal Action alleges only two claims, both running against Sedgwick and Brach: for promissory estoppel, Compl. ¶¶ 80-90, and equitable estoppel. *Id.* ¶¶ 91-102. The Amended Complaint in the Third Federal Action alleges three claims, asserted against "all defendants": for promissory estoppel, Am. Compl. ¶¶ 91-101, equitable estoppel, *id.* ¶¶ 102-113, and negligent misrepresentation. *Id.* ¶¶ 114-26.

## II.    PLAINTIFF'S MOTION

Many of the documents that plaintiff asks the Court to judicially notice are already attached to his Complaint in No. 23-CV-2145 and/or his Amended Complaint in No. 23-CV-10380. Others appear elsewhere in the record, typically as exhibits to one or more of the numerous motions, memoranda and affidavits that plaintiff has filed in this Court. As to each document for which he seeks judicial notice, plaintiff states (both in his unsworn motion and in his accompanying affidavit) that he has submitted a "true and accurate copy," and that the document is "relevant to the claims alleged in my verified complaints, as well as to any pending motion for judgment on the pleadings, motion for summary judgment or motion to dismiss." Pl. Mot. ¶ 2; Pl. Aff. ¶ 1. In a number of instances, however, the document itself has clearly been annotated by hand. *See*, *e.g.*, Pl. Aff. Exs. 8-11, 13-14, 17-28, 30-31, 33, 36, 39, 45.

In his motion, plaintiff not only describes the documents for which he seeks judicial notice; he explains who created them, when they were sent to or received by Kmart or Sedgwick, and even (in some instances) for what purpose they were created or sent.[4] In his accompanying affidavit, plaintiff narrates these matters at greater length, beginning with the circumstances surrounding his initial Zoloft prescription, *see* Pl. Aff. ¶ 2, and continuing with his conversations with Kmart pharmacists in the aftermath of his 2010 overdose, *id.* ¶¶ 3-9; monitoring by doctors in 2010, *id.* ¶ 10; his medical testing in 2017, *id*. ¶ 11; his interactions with Hom and Brach in March of

---

[4] *See*, *e.g*., Pl. Mot. at 2 (stating that Exhibit 5 to plaintiff's accompanying affidavit "is a true and accurate copy of the prescription for my Wellbutrin XL 150 mg . . . that was sent to the Kmart Pharmacy/Kmart Corporation #770 Broadway, New York, N.Y. 10003, and to which [sic] was specifically prescribed because of the situation with the adverse event(s)/incident that involved the combined Zoloft/Sertraline and the serotonin syndrome situation in July 2010"); *id*. at 3 (stating that Exhibit 6 was "personally hand delivered" by plaintiff to Tania Li, a Kmart pharmacist, on August 16, 2010, and that Ms. Li "accepted [it] and stated that she will forward it to the Kmart district manager").

that year, *id*. ¶¶ 12-27; what he did after Sedgwick denied his claim on limitations grounds (including his complaint to the New York State Department of Financial Services and Sedgwick's response), *id*. ¶¶ 28-37; defendants' conduct during the State Court Action, including their alleged alteration of plaintiff's prescription records, *id*. ¶¶ 38-51; and their "uncooperative conduct" in this Court. *Id*. ¶¶ 52-82. At the outset of his motion, however, and at the conclusion of his affidavit, plaintiff clearly asks the Court to take judicial notice of the "documents" he has presented, not the facts set forth in his motion and affidavit. Pl. Mot. ¶ 1; Pl. Aff. ¶ 83. I therefore construe his motion as extending to only those documents, and decline to consider whether the facts asserted in his motion or his affidavit are themselves judicially noticeable.

## III.    ANALYSIS

### A.    Legal Standard

Under Rule 201(b) of the Federal Rules of Evidence, a court "may judicially notice a fact that is not subject to reasonable dispute because it (1) is generally known within the trial court's territorial jurisdiction; or can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). The court may take judicial notice of such facts "on its own" or "if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(1)-(2). For example, "[c]ourts may take judicial notice of public documents or matters of public record," *Casey v. Odwalla, Inc.*, 338 F. Supp. 3d 284, 294 (S.D.N.Y. 2018), including the contents of court dockets. *See Kramer v. Time Warner Inc*., 937 F.2d 767, 774 (2d Cir. 1991) ("[C]ourts routinely take judicial notice of documents filed in other courts[.]"); *Simeone v. T. Marzetti Co*., 2023 WL 2665444, at *2 (S.D.N.Y. Mar. 28, 2023) ("[C]ourts in the Second Circuit regularly take judicial notice of decisions and orders issued by other courts.").

Importantly, however, a federal court takes judicial notice of previously-filed litigation documents "not for the truth of the matters asserted in the other litigation, but rather to establish

the fact of such litigation and related filings." *Glob. Network Commc'ns v. City of New York*, 458 F.3d 150, 157 (quoting *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998)); *accord Kramer*, 937 F.2d at 774. Thus, in *FDIC v. Concordia*, Chief Judge Swain held that although two affidavits offered by defendants were publicly-available documents, previously filed in state court, they were "not properly subject to judicial notice for the purposes for which they are offered," that is, to have the court consider the *facts* stated therein in support of their motion to dismiss the complaint. 2024 WL 4362783, at *3 (S.D.N.Y. Sept. 30, 2024). And in *McKenzie-Morris v. V.P. Recs. Retail Outlet, Inc.*, 638 F. Supp. 3d 333 (S.D.N.Y. 2022), *reconsideration denied*, 2023 WL 8440860 (S.D.N.Y. Oct. 16, 2023), Judge Woods assessed Rule 11 sanctions against plaintiffs for making a "frivolous" motion that improperly asked the court to take judicial notice of the truth of various assertions made in prior court filings. *Id*. at 339-42.

The courts cannot take judicial notice of either the contents or the truth of ordinary business or personal communications, medical records, home-made audio recordings, or transcripts based on such recordings, because these matters are neither generally known within the jurisdiction nor capable of being accurately and readily determined from sources whose accuracy cannot reasonably be questioned.[5] This is true even where *one* party attests to the accuracy of the

---

[5] *See*, *e.g.*, *Rowe Plastic Surgery of New Jersey, L.L.C. v. Aetna Life Ins. Co.*, 705 F. Supp. 3d 194, 200 (S.D.N.Y. 2023) (court could not take judicial notice of pre-authorization letter from defendant insurance company approving surgical procedure), *aff'd,* 2024 WL 4315128 (2d Cir. Sept. 27, 2024); *Royal Borough of Kensington & Chelsea v. Bafna-Louis*, 2023 WL 2387385, at *10 n.8 (S.D.N.Y. Mar. 7, 2023) (court could not take judicial notice of psychologist's evaluation of litigant's child), *aff'd,* 2023 WL 6173335 (2d Cir. Sept. 22, 2023), and *aff'd,* 2023 WL 6867135 (2d Cir. Oct. 18, 2023); *Advanced Analytics, Inc. v. Citigroup Glob. Markets Inc.*, 2022 WL 2529281, at *4 (S.D.N.Y. July 7, 2022) (court could not take judicial notice of "[p]laintiff's own correspondence and memoranda"), *reconsideration denied,* 2022 WL 21295155 (S.D.N.Y. July 26, 2022); *Berkley v. City of New Rochelle*, 2022 WL 784018, at *3 (S.D.N.Y. Mar. 15, 2022) (declining to take judicial notice of audio recordings of 911 calls); *Carnegie Inst. of Washington*

documents in question or their contents. *See Anderson v. Cnty. of Nassau*, 297 F. Supp. 2d 540, 545 (E.D.N.Y. 2004) (declining to take judicial notice of facts stated in government attorney's affidavit as to course of prior criminal action, even though court did not "doubt the reliability" of the report, where there was no "documentation to verify the accuracy of these statements"). As the advisory committee explained, "The usual method of establishing adjudicative facts is through the introduction of evidence, ordinarily consisting of the testimony of witnesses." Fed. R. Evid. 201, advisory committee's note to 1972 proposed rule. Although this process may be dispensed with as to facts "outside the area of reasonable controversy," a "high degree of indisputability is the essential prerequisite" to judicial notice. *Id*.

As discussed in more detail below, most of the documents attached to plaintiff's motion papers do not qualify for judicial notice under Rule 201(b). This does not necessarily mean, however, that the Court cannot consider them in connection with defendants' pending motions to dismiss. When deciding a motion made pursuant to Rule 12(b)(6) or Rule 12(c), the court must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). The plaintiff's complaint, for this purpose, is deemed to include (i) documents attached thereto as exhibits, *see* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); (ii) "materials incorporated in [the complaint] by reference," *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011)

---

*v. Pure Grown Diamonds, Inc.*, 2020 WL 5209822, at *4 (S.D.N.Y. Aug. 31, 2020) (correspondence between the parties' attorneys, and the lab notebook of Dr. Li, who allegedly invented the technique that defendant sought to patent, were "non-public documents that cannot be the subject of judicial notice"); *Campbell v. Hanson*, 2018 U.S. Dist. LEXIS 111215, at *14-15 (S.D.N.Y. June 29, 2018) ("As a general matter, the Court may not take judicial notice of medical records."); *Casey*, 338 F. Supp. 3d at 294-95 (court could not take judicial notice of letter from FDA obtained via FOIA request).

(quoting *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004)); and (iii) "documents that, although not incorporated by reference, are 'integral' to the complaint." *Id.*; *accord Kalyanaram v. Am. Ass'n of Univ. Professors at New York Inst. of Tech., Inc.*, 742 F.3d 42, 44 n.1 (2d Cir. 2014).[6] While a document that is attached to, incorporated into, or integral to the complaint does not thereby become judicially noticeable for purposes *other* than the motion to dismiss, the court may "consider" the document when determining such a motion. *L-7 Designs*, 647 F.3d at 422. As to each of plaintiff's 45 documents, therefore, I discuss not only whether it is judicially noticeable pursuant to Rule 201(b) but also whether it can be considered as part of plaintiff's pleading (subject to the presumption of truth) for purposes of defendants' motions to dismiss.

## B.    Exhibits 1-45

### Exhibit 1

The first exhibit for which plaintiff seeks judicial notice appears to be a copy of a Zoloft prescription in his name, dated May 4, 2010, bearing the printed name Rania Attia, M.D., and an illegible signature. Although plaintiff alleges that he "was receiving therapy by means of prescribed Sertraline/Zoloft in 2010" (Compl. ¶ 21, Am. Compl. ¶ 31), neither of his operative pleadings explicitly refers to or relies upon the May 4 prescription. Nor is that document self-

---

[6] A document is "deemed incorporated by reference into the complaint" where the complaint "explicitly refers to and relies upon" it. *Sira*, 380 F.3d at 67; *see also Dunkelberger v. Dunkelberger*, 2015 WL 5730605, at *5 (S.D.N.Y. Sept. 30, 2015) ("[t]o be incorporated by reference, the complaint must make a clear, definite, and substantial reference to the documents") (quoting *Bill Diodato Photography LLC v. Avon Prods., Inc.*, 2012 WL 4335164, at *3 (S.D.N.Y. Sept. 21, 2012)) (alterations omitted). "Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (quoting *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006)). In such a case, it must be clear that no dispute exists concerning the document's authenticity or relevance. *Id.*

authenticating or otherwise subject to judicial notice pursuant to Rule 201(b). I therefore decline to take judicial notice of Exhibit 1.

### Exhibit 2

Exhibit 2 appears to be a copy of a July 23, 2010 letter from plaintiff to "Kmart Corporation #7777," complaining that he was given incorrect dosage instructions for his Zoloft prescription on July 16, 2010. Included in the exhibit (although it is not clear whether they were attachments to the July 23 letter) are copies of the May 4 prescription, a receipt for Zoloft dated June 15, 2010, a second receipt for Zoloft dated June 14, 2010, and a third receipt for Zoloft dated July 16, 2010.

Both of plaintiff's operative complaints explicitly refer to his July 23, 2010 letter. *See* Compl. ¶ 24; Am. Compl. ¶ 34. Additionally, the letter is attached (as part of a longer exhibit) to both pleadings. *See* Compl. Ex. 4; Am. Compl. Ex. 4. However, as noted above, the pleadings do not refer to or rely upon the May 4 prescription. Nor do they mention the Zoloft receipts now included in Exhibit 2, which are not subject to judicial notice pursuant to Rule 201(b). I therefore decline to take judicial notice of Exhibit 2. However, the Court may consider the July 23, 2010 letter (without the attachments) when deciding defendants' motions to dismiss.

### Exhibit 3

Plaintiff describes Exhibit 3 as a "copy of the dispensed instructions/dispensed directions on each of the labels on the medicine vials with [his] Zoloft medications on July 16, 2010." Pl. Mot. at 2. However, the exhibit is almost solidly black. No labels or instructions can be discerned. I therefore decline to take judicial notice of Exhibit 3.

### Exhibit 4

Exhibit 4 appears to be a copy of another Zoloft prescription in plaintiff's name, this one dated May 13, 2010, bearing the printed name of David Alan Goldschmitt, M.D., and an illegible signature. As noted above, plaintiff alleges that he "was receiving therapy by means of prescribed

Sertraline/Zoloft in 2010." Compl. ¶ 21, Am. Compl. ¶ 31. However, neither of his pleadings refers to or relies upon the May 13 prescription, which is neither self-authenticating nor otherwise subject to judicial notice. I therefore decline to take judicial notice of Exhibit 4.

### Exhibit 5

Exhibit 5 appears to be a copy of a Wellbutrin (bupropion) prescription in plaintiff's name, dated August 4, 2010, bearing the printed name of Edward Kilbane, M.D., and an illegible signature. Plaintiff does not mention this prescription (or indeed any Wellbutrin prescription) in either of his operative pleadings. Nor is the document self-authenticating or otherwise subject to judicial notice. I therefore decline to take judicial notice of Exhibit 5.

### Exhibit 6

Exhibit 6 is duplicative of Exhibit 2. No separate ruling is required.

### Exhibit 7

Exhibit 7 is duplicative of Exhibit 2. No separate ruling is required.

### Exhibit 8

Exhibit 8 is a Doctor's Progress Report, dated December 29, 2010, completed by John Clive Spiegel, M.D., apparently in connection with plaintiff's application for workers' compensation benefits. The Progress Report indicates that plaintiff suffered his "second" and "latest" "toxic exposure from overdose" on July 18, 2010, after an earlier injury on December 17, 2007. (*See* Dkt. 26 at ECF p. 60.) Spiegel opined that plaintiff could not return to work because "his memory is far too impaired." (*See id*. at ECF p. 61.) Neither of plaintiff's operative complaints refers to Dr. Spiegel's examination or attaches the Progress Report. Nor is the document self-authenticating or otherwise subject to judicial notice. I therefore decline to take judicial notice of Exhibit 8.

**Exhibit 9**

Exhibit 9 appears to be an index of 43 medical records and other documents (aggregating 1109 pages) produced by plaintiff to defendants in discovery in No. 23-CV-2145, together with copies of plaintiff's cover emails to defendants' counsel, both dated July 6, 2023, transmitting the index and the records. The index includes commentary concerning some of the records and what plaintiff believes they mean. *See*, *e.g.*, Pl. Aff. at ECF p. 66. Neither the contents of the index nor the truth of those contents is "generally known" in this jurisdiction or capable of verification via "sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(1)-(2). I therefore decline to take judicial notice of Exhibit 9.

**Exhibit 10**

Exhibit 10 appears to be a copy of an email dated February 24, 2017, from plaintiff to Kmart regional manager Dennis Tokofsky, with handwritten annotations. The exhibit also includes – apparently as attachments to the 2017 email – a copy of plaintiff's July 23, 2010 letter and its attached prescription receipts (*see* Exhibit 2, above), along with a copy of another letter, dated January 3, 2014, addressed to "Kmart Corporation 7777," asking for a response to his July 23, 2010 letter.

Plaintiff attached the February 24, 2017 email, as well as the annexed July 23, 2010 letter, to both of his operative complaints. *See* Compl. Ex. 4; Am. Compl. Ex. 4. However, he did not attach the remainder of what is now Exhibit 10. Nor did he explicitly refer to or rely upon the prescription receipts – or the January 3, 2014 letter – in either of those pleadings. No part of Exhibit 10 is self-authenticating or otherwise subject to judicial notice. Consequently, I decline to take judicial notice of Exhibit 10. However, the Court may consider the February 24, 2017 email and the July 23, 2010 letter (without the receipts) when deciding defendants' motions to dismiss.

**Exhibit 11**

Exhibit 11 appears to be a copy of an email sent to defendant Brach from another Sedgwick employee, Bonita Taskov, forwarding a "Quality Related Event Report" by Hom (QRE Report), dated February 24, 2017, describing the allegations that plaintiff made to Hom that day concerning his 2010 overdose. Plaintiff attached the forwarding email and the QRE Report (that is, all of Exhibit 11) to his Amended Complaint in No. 23-CV-10380, *see* Am. Compl. at 10 ¶¶ E, F; *id.* Ex. 5, but did not mention the email or the QRE Report in his Complaint in No. 23-CV-2145. No part of Exhibit 11 is independently subject to judicial notice. Consequently, I decline to take judicial notice of Exhibit 11. However, the Court may consider it when deciding defendants' motion to dismiss in No. 23-CV-10380.

**Exhibit 12**

Plaintiff describes Exhibit 12 as images of "the dispensed directions and instructions given on three (3) separate bottles, to which specifically stated on each bottles 'Take three tablets by mouth in the evening' '1 of 3,' '2 of 3,' and '3 of 3.'" Pl. Mot. at 4. However, the exhibit itself (like Exhibit 3) is almost solidly black. No labels or instructions can be discerned. Moreover, Exhibit 12 does not appear to be attached to either of plaintiff's operative pleadings. I therefore decline to take judicial notice of Exhibit 12.

**Exhibit 13**

Exhibit 13 appears to be an annotated copy of a March 1, 2017 letter from Sandra Brach to plaintiff, advising that she is "the examiner assigned to [his] file" and asking him to contact her. Neither the contents of the letter nor the truth of those contents is judicially noticeable pursuant to Rule 201(b). However, plaintiff attached the letter to his Amended Complaint in No. 23-CV-10380. *See* Am. Compl. Ex. 15. Consequently, while I decline to take judicial notice of Exhibit 13, the Court may consider it when deciding the motion to dismiss in No. 23-CV-10380.

**Exhibit 14**

Exhibit 14 is substantively the same letter as Exhibit 13, but is dated March 3 instead of March 1, 2017. Like Exhibit 14, it is attached to plaintiff's pleading in No. 23-CV-10380, *see* Am. Compl. Ex. 15, but not in No. 23-CV-2145. For the reasons set forth above, I decline to take judicial notice of Exhibit 14. However, the Court may consider it when deciding the motion to dismiss in No. 23-CV-10380.

**Exhibit 15**

Exhibit 15 appears to be a copy of an email from defendant Brach to plaintiff, dated April 7, 2017, in which Brach states, "As requested, attached is a copy of the first letter that was unsuccessful in reaching you." Exhibit 15 does not include the original attachment, and is neither self-authenticating nor otherwise admissible pursuant to Rule 210(b). Neither of plaintiff's operative pleadings discusses the April 7, 2017 email. However, its text is attached to both, as part of a longer email chain. *See* Compl. Ex. 6 at 3; Am. Compl. Ex. 7 at 3. Consequently, while I decline to take judicial notice of Exhibit 15, the Court may consider it when deciding defendants' motions to dismiss.

**Exhibit 16**

Exhibit 16 claims to be a transcript – apparently prepared by plaintiff himself – of his 31-minute telephone call with defendant Brach on March 14, 2017. The same version of the transcript is attached to plaintiff's Amended Complaint in No. 23-CV-10380. *See* Am. Compl. Ex. 6. Another version (missing the introductory paragraph)[7] is attached to his Complaint in No. 23-CV-2145. *See*

---

[7] The introductory paragraph states:

I Brian Coke Ng, hereby sworn, under penalty of perjury, that this is a transcript of a conversation and communication during a telephone call between myself and Ms. Sandra Brach Of Sedgwick Claims Management Services, Inc. on March 14, 2017. I further hereby introduce her statements of March 14, 2017, as (1) hearsay

Compl. Ex. 5. Both pleadings quote extensively from the transcript, which they treat as an accurate record of the call. *See* Compl. ¶¶ 39-45; Am. Compl. ¶¶ 49-55. Whether it is in fact an accurate record of the call cannot be determined on the record presently before the Court. Nor, of course, is the content of the conversation between plaintiff and Brach something that is "generally known" within this jurisdiction. Consequently, I decline to take judicial notice of Exhibit 16. However, the Court may consider it when deciding defendants' motions to dismiss.

### Exhibit 17

Exhibit 17 appears to be a copy of defendant Brach's March 21, 2017 letter to plaintiff, denying his claim. Like the other letters and emails that plaintiff has presented, the March 21, 2017 letter is not judicially noticeable pursuant to Rule 201(b). However, plaintiff attached the letter to both of his operative pleadings. *See* Compl. Ex. 6; Am. Compl. Ex. 7. Consequently, while I decline to take judicial notice of Exhibit 17, the Court may consider it when deciding defendants' motions to dismiss.

### Exhibit 18

Exhibit 18 is another transcript – this one of a conversation that took place (apparently in person) on March 24, 2017, between plaintiff and pharmacist Hom. Plaintiff discusses this conversation in his Amended Complaint in No. 23-CV-10380, and attaches the transcript as an exhibit. *See* Am. Compl. at 20 ¶ a; *id.* Ex. 8. He does not mention the conversation, nor attach the

---

statements of a declarant's then-existing state of mind may be admitted to prove that state of mind. United States v. Bishop, 291 F.3d 1100, 1110 (9th Cir. 2002) ("Statements of intent to perform a future act are admissible 'state of mind' testimony under Rule 803(3).") and (2) as per Federal Rules of Evidence 801 (d)(2)(A) and (D) and per Federal Rules of Evidence, respectively:

Both versions of the transcript conclude with an attestation, by plaintiff, that the statements set forth therein, "to the best of my personal knowledge, are truthfully transcribed, written out and copied, and therefore represents the facts currently resides on the digital audio recordings device/media." *See* Compl. at ECF p. 90; Am. Compl. at ECF p. 112.

transcript, in No. 23-CV-2145. For the reasons discussed above (concerning Exhibit 16), I decline to take judicial notice of Exhibit 18. However, the Court may consider it when deciding defendants' motion to dismiss in No. 23-CV-10380.

### Exhibits 19 and 20

Exhibits 19 and 20 appear to be letters from plaintiff to Kmart, both dated May 3, 2017, along with their respective FedEx tracking receipts. In the letters, plaintiff asserts two claims, one for "latent injury" (Exhibit 19) and the second for "professional misconduct" (Exhibit 20), both arising out of his 2010 Zoloft overdose. Plaintiff explains that both letters were assigned "Sedgwick's claim number (L17022451370001)." Pl. Mot. at 5.

Neither letter is attached to plaintiff's operative pleadings. Moreover, while his Amended Complaint in No. 23-CV-10380 alleges that he submitted a "latent injury" claim to Kmart, *see* Am. Compl. ¶ 70, he does not mention any "professional misconduct" claim. The letters themselves are not judicially noticeable. However, construing the Amended Complaint generously, I deem Exhibit 19 incorporated therein by reference. Consequently, while I decline to take judicial notice of either Exhibit 19 or Exhibit 20, the Court may consider Exhibit 19 when deciding defendants' motion to dismiss in No. 23-CV- 10380.

### Exhibit 21

Plaintiff describes Exhibit 21 (which appears to have been redacted and annotated by him) as "a true and accurate copy of someone's else medical records, including that person's protected health information (PHI) that was accessed at Kmart Pharmacy Store # 4483 which is located in Alexandra Virginia, that got assigned with the claim number assigned to my case (Ll 7022451370001) on June 6, 2017, and reflected as part of my claims files at Sedgwick." Pl. Mot. at 6. There is no basis upon which the Court could take judicial notice of Exhibit 21. However, plaintiff previously attached it to his Amended Complaint in No. 23-CV-10380. *See* Am. Compl.

Ex. 16. Consequently, while I decline to take judicial notice of Exhibit 21, the Court may consider it when deciding defendants' motion to dismiss in No. 23-CV- 10380.

### Exhibits 22 and 23

Exhibits 22 and 23 appear to be copies of near-identical letters from Sedgwick to the New York State Department of Financial Services, dated June 8 and September 18, 2017, respectively, summarizing "the misunderstanding that has developed between Sedgwick Claims Management Services, Inc. and Brian Coke Ng," and explaining that plaintiff's "alleged two new claims," submitted on May 3, 2017, were not in fact "new" claims, but were claims that had already been denied, for which the statute of limitations had run. Plaintiff did not attach either the June 8 letter or the September 18 letter to either of his operative complaints. Nor does he refer to them, directly or indirectly, in either pleading. Moreover, portions of the letters are underlined or bracketed, apparently by plaintiff. I therefore decline to take judicial notice of Exhibits 22 and 23.

### Exhibit 24

Exhibit 24 appears to be a copy of a letter dated April 16, 2018, from Sedgwick's litigation consultant Kenneth Flowers to Kmart pharmacist Jack Hellyer, requesting that Hellyer cooperate with defense counsel and Sedgwick in *Brian Coke Ng v. Kmart.* Plaintiff did not attach the April 16, 2018 letter to either of his operative complaints, which do not refer to it in any way. Moreover, portions of the letter are circled or bracketed, apparently by plaintiff. I therefore decline to take judicial notice of Exhibit 24.

### Exhibit 25

Exhibit 25 is an unsigned report, dated June 15, 2018, entitled "Medical Expenses," showing that plaintiff spent a total of $93.63 for prescriptions filled between January 1, 2010 and June 15, 2018 at Kmart Corporation #7777. Plaintiff did not attach this exhibit to either of his

operative complaints, which do not refer to it – or discuss his prescription expenses – in any way. I therefore decline to take judicial notice of Exhibit 25.

### Exhibit 26

Exhibit 26 appears to be a copy of a Kmart pharmacy receipt dated September 17, 2010, reflecting plaintiff's bupropion prescription. Plaintiff did not attach this exhibit to either of his operative complaints, which do not refer to it or rely on it in any way. Moreover, the document includes handwritten annotations commenting that the receipt includes the "correct pharmacist," "correct address," "correct pharmacist initial," and "correct date and services." Additional handwritten notations are too faint to read. I therefore decline to take judicial notice of Exhibit 26.

### Exhibit 27

The first page of Exhibit 27 is a report entitled "Medical Expenses," dated March 24, 2017, showing that plaintiff spent a total of $93.63 for prescriptions filled between January 1, 2009 and January 1, 2017 at Kmart Corporation #7777. This report appears to be signed by pharmacist Hom. The second page of Exhibit 27 is another medical expense report, this one dated January 13, 2015, again showing that plaintiff spent a total of $93.63 for prescriptions filled between January 1, 2009 and December 31, 2014, at Kmart Corporation #7777. This report is initialed by "YG." Plaintiff did not attach either page of Exhibit 27 to his operative complaints, which do not refer to them or rely on them. I therefore decline to take judicial notice of Exhibit 27.

### Exhibit 28

Exhibit 28 appears to be a copy of a Judicial Subpoena Duces Tecum so-ordered by the Honorable David B. Cohen, J.S.C., on June 29, 2018, in the State Court Action. In the copy submitted to this Court, the plaintiff's date of birth has been redacted. Normally, such redaction is required by Fed. R. Civ. P. 5.2(a). However, pursuant Fed. R. Civ. P. 5.2(b)(3) and (4), birth dates that appear in state court records need not be redacted when the same records are submitted to this

Court. Although state court records are ordinarily subject to judicial notice, it appears that Exhibit 28 is not an exact copy of the subpoena as filed in the State Court Action. I therefore decline to take judicial notice of Exhibit 28, without prejudice to renewal of the request upon submission of the document as it appears in the files of the State Court.

### Exhibit 29

Exhibit 29 appears to be a copy of a typed note dated July 18, 2018, from "Harshal," to "Marcia and Ken," requesting a certified copy of "all medication profile and all records maintained by Kmart pharmacy relating to the plaintiff" and "a certified copy of Kmart Pharmacy Notice of Privacy and practices with effective date of 9/2/14 and 1/6/2015, if any exist." Plaintiff identifies "Harshal" as a "defense attorney," but does not identify "Marcia and Ken," or explain the provenance of Exhibit 29. *See* Pl. Mot. at 8. There is no mention of this note in either of plaintiff's operative complaints. Moreover, portions of the note are redacted. I therefore decline to take judicial notice of Exhibit 29.

### Exhibit 30

Exhibit 30 appears to be a collection of Kmart pharmacy receipts with handwritten annotations by plaintiff. According to plaintiff, these receipts were produced by Kmart "in response to the Judicial Subpoena Duces Tecum," but "do not match my original receipts and original records," which is why he "placed an arrow pointing to each line items that are reflecting the alterations[.]" Pl. Mot. at 8. One of the annotations states that "[t]he records received were not certified as per subpoena so ordered by Hon. David B. Cohen." Pl. Aff. at ECF p. 161. Even if the pharmacy receipts were judicially noticeable, plaintiff's annotations would not be. Moreover, plaintiff did not attach this exhibit to either of his operative complaints. I therefore decline to take judicial notice of Exhibit 30.

20

**Exhibit 31**

Exhibit 31 is another collection of Kmart pharmacy receipts. These receipts, plaintiff explains, are his "original documents." Pl. Mot. at 8. However, they too are annotated, with notes reading, "Correct Pharmacist," "Correct Address," and the like. *See*, *e.g*., Pl. Aff. at ECF p. 167. For the same reasons discussed above, I decline to take judicial notice of Exhibit 31.

**Exhibit 32**

Exhibit 32 is a "true and accurate copy" of a court order in the State Court Action, dated March 30, 2018 and bearing a file-stamp dated September 21, 2018, issued by Justice Cohen after he was "informed about the alterations of the records received." Pl. Mot. at 9. Justice Cohen denied plaintiff's motion for contempt sanctions, noting that the "records have been provided" and that "plaintiff's claim that they have been altered is, at best, an issue for the trier of fact[.]" Pl. Aff. at ECF p. 173. Although the relevance of Exhibit 32 to either of defendants' pending motions (or any other issue in these cases) is unclear, the document is judicially noticeable. I therefore take judicial notice of the existence and contents of Justice Cohen's March 20, 2018 order in the State Court Action. *See Glob. Network Commc'ns*, 458 F.3d at 157.

**Exhibit 33**

Exhibit 33 appears to be a copy of an email chain between plaintiff and defendants' counsel in the State Court Action on December 19, 2018. The emails are not subject to judicial notice pursuant to Rule 201(b) and are not attached to or discussed in either of plaintiff's operative complaints. I therefore decline to take judicial notice of Exhibit 33.

**Exhibit 34**

Exhibit 34 is a copy of another email, dated October 26, 2021, from plaintiff to defendants' attorneys, with an attachment consisting of a draft Joint Status Update (signed only by plaintiff) on the caption of the First Federal Action. Neither the email nor its attachment is subject to judicial

notice pursuant to Rule 201(b), and neither is attached to or discussed in plaintiff's operative complaints. I therefore decline to take judicial notice of Exhibit 34.

### Exhibit 35

Exhibit 35 appears to be a copy of an email dated October 7, 2021, from one of defendants' attorneys, reading, "Judy – just to you. If you recall – this guy lives in a shelter and has nothing but time. We are not making a motion to lift the stay and we are not doing a 4 pg update. I agree with you. All the court needs to know is that there is still a stay." (Although addressed to "Judy," the email appears to have been transmitted directly to plaintiff, presumably by mistake.) The email is not judicially noticeable pursuant to Rule 201(b), but is quoted – in its entirety – in both of plaintiff's operative complaints *See* Compl. ¶ 76; Am. Compl. ¶ 87. Consequently, while I decline to take judicial notice of Exhibit 35, the Court may consider it when deciding defendants' motions to dismiss.

### Exhibit 36

Exhibit 36 is an October 28, 2021 status letter in the First Federal Action, as filed by defendants in No. 18-CV-9373 (at Dkt. 9). Again, the relevance of the document to either of defendants' pending motions (or any other issue in these cases) is unclear. However, the document is judicially noticeable. *See Glob. Network Commc'ns*, 458 F.3d at 157.

### Exhibit 37

Exhibit 37 appears to be a November 30, 2022 status letter in the First Federal Action, signed by defendants' counsel and addressed to the District Judge. However, no such status letter appears on the docket of No. 18-CV-9373. Nor is the November 30 letter attached to either of plaintiffs' operative complaints. I therefore decline to take judicial notice of Exhibit 37.

**Exhibits 38 and 39**

Exhibits 38 and 39 are defendants' December 2, 2022 and January 6, 2023 status letters in the First Federal Action, as filed by defendants in No. 18-CV-9373 (at Dkts. 15 and 21). While the relevance of defendants' old status letters remains a mystery, the documents are judicially noticeable, for the limited purposes permitted by *Glob. Network Commc'ns*, 458 F.3d at 157.

**Exhibit 40-43**

Exhibits 40 through 43 are copies of the following documents, all docketed in the First Federal Action: the parties' stipulation of dismissal dated January 11, 2023 (Dkt. 25 in No. 18-CV-9373); the transcript of a conference held before the District Judge on May 17, 2023 (Dkt. 49 in No. 18-CV-9373); the parties' stipulation of dismissal dated May 18, 2023, and so-ordered by the District Judge (Dkt. 42 in No. 18-CV-9373); and the parties' amended stipulation of dismissal without prejudice dated September 14, 2023 (Dkt. 57 in No. 18-CV-9373). I take judicial notice of these documents for the limited purposes permitted by *Glob. Network Commc'ns*, 458 F.3d at 157.

**Exhibits 44 and 45**

Exhibit 44 is the declaration of service of defendants' motion for judgment on the pleadings, dated June 26, 2024, in No. 23-CV-2145 (at Dkt. 66). Exhibit 45 is a copy of the docket sheet in No. 23-CV-2145 as of July 22, 2024, with handwritten annotations, presumably by plaintiff. There is no need to request judicial notice of a document that is already on file before the Court in the same case where the motion for judicial notice is made. Moreover, for the reasons discussed above, the Court cannot take judicial notice of plaintiff's annotations Consequently, I decline to take judicial notice of Exhibits 44 and 45.

### C.    Plaintiff's Other Requests

Without attaching any exhibits, plaintiff also requests that this Court take judicial notice of three additional documents docketed in the First Federal Acton: the Court's order dated November 6, 2018 (Dkt. 6 in No. 18-CV-9373); the Court's order dated October 7, 2021 (Dkt. 7 in No. 18-CV-9373); and the Court's order dated November 29, 2022 (Dkt. 14 in No. 18-CV-9373). *See* Pl. Mot. at 9-11. All three orders directed the parties to submit status updates concerning the Kmart bankruptcy. These orders do not appear to be relevant in any way to the pending motions to dismiss (or to any other issue in these cases). Nonetheless, I take judicial notice of them for the limited purposes permitted by *Glob. Network Commc'ns*, 458 F.3d at 157.

## IV.    CONCLUSION

For the reasons set forth above, plaintiff's motion for judicial notice is GRANTED in part. All relief not expressly granted herein is DENIED. The Clerk of Court is respectfully directed to close the motions at Dkt. 69 in No. 23-CV-2145 and Dkt. 35 in No. 23-CV-10380.

Dated: New York, New York
      November 19, 2024                   **SO ORDERED.**

                                          _____

                                          **BARBARA MOSES**
                                          **United States Magistrate Judge**